NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUAN VALDES, | : | |
|  | : | Civ. No. 05-3510 (GEB) |
| Plaintiff, | : | |
|  | : | **MEMORANDUM OPINION** |
| v. | : | |
|  | : | |
| STATE OF NEW JERSEY, et al., | : | |
|  | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon Plaintiff Juan Valdes' Motion for Partial Summary Judgment (hereinafter "Plaintiff") pursuant to Federal Rule of Civil Procedure 56 [Docket Entry # 32] and upon Defendants State of New Jersey, New Jersey Department of Corrections Correctional Staff Training Academy, Devon Brown, Craig Conway, Bernard Willie, James Lutz and Matthew Kyle's Motion for Summary Judgment (hereinafter "Defendants") pursuant to Rule 56 [Docket Entry # 31]. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted.

## I.    BACKGROUND

On or about October 31, 2003, Defendants State of New Jersey and the New Jersey Department of Corrections Correctional Staff Training Academy, a facility operated by the Department of Corrections, a State Department, offered Plaintiff employment with the Department of Corrections and required him to complete the Corrections Officer Training Program (hereinafter "Program"). (Sec. Amend. Compl., ¶ 20). The program was to begin on

November 17, 2003, and last approximately 14 weeks.  (Id.; Def. Motion, p. 2).  During the

training period, and until successful completion of the Program, Plaintiff was considered to be a

"candidate" and "part of a pre-employment process."  (Def. Motion, p. 2).

     At all times relevant, Plaintiff was "an adult male who practices and abides by the

Muslim religion."  (Sec. Amend. Compl., ¶ 7).  Plaintiff asserts that his religion "prohibits him

from shaving his beard."  (Id.).  However, the Program, through the Department of Corrections,

has a written policy precluding correction officer recruit candidates attending the program from

having any facial hair.  (Def. Motion, p. 2).  Plaintiff was notified of this fact in the offer letter

received on or about October 31, 2003.  (Sec. Amend. Complaint, ¶ 21).  Plaintiff discussed the

issue of his religious requirements with Defendant, through Lieutenant Michael Smith.  (Id. at ¶

22).  Plaintiff's request to allow him to have facial hair was denied, prompting Plaintiff to file a

EEOC Complaint on November 13, 2003.  (Id. at ¶ 25).  On or about November 20, 2003,

Defendants agreed to accommodate Plaintiff by permitting him to grow a beard no longer than

one-eighth of an inch.  (Id. at ¶ 26).  Prior to commencing the Program, Plaintiff signed a written

acknowledgment and agreement regarding the one-eighth inch maximum facial hair growth.

(Def. Motion, p. 3).

     Plaintiff commenced the Program sometime in November.  (Sec. Amend. Complaint, ¶

27; Def. Motion, p. 3).[1]  On the first day of training, the day Plaintiff arrived at the Program, it

---

     [1] Plaintiff does not refer to a specific date in his amended complaint when he began training.  Plaintiff asserts that on November 20, 2003, Defendants agreed to accommodate Plaintiff by permitting facial hair growth and that "thereafter" Plaintiff entered the Program. Defendants argue that Plaintiff and Defendants entered an agreement prior to November 20, 2003, and that on November 17, 2003, Plaintiff entered the Program.  The date Plaintiff entered the Program is not an issue of material fact, and it is sufficient for these Summary Judgment Motions that Plaintiff entered the Program sometime in mid to late November.

was observed by his superior that Plaintiff's facial hair was exceeding one-eighth of an inch, and he was issued a "demerit" for said excess facial hair. (Def. Motion, Exh. F., Dep. of Plaintiff, p. 61)("Q.  But you admit even the first day that you appeared with your beard greater than one-eighth of an inch?  A. Yes.").  Plaintiff was additionally verbally warned and/or received demerits for having facial hair that exceeded one-eighth of an inch on at least two other occasions throughout his training.  (Id. at p. 79)("Q.  Okay.  How many times were you told that your beard length was too long?  A.  I don't remember the exact number . . . Q.  More than once?  A.  It was more than once.  Q.  More than twice?  A.  I believe it was more than twice.").[2]

On January 20, 2004, while on a training mission at East Jersey Prison, Plaintiff's superior noted that Plaintiff's facial hair exceeded one-eighth of an inch.  Although Plaintiff did not receive a demerit for this error, he was instructed to comply with the requirement by the next day.  However, on January 21, 2004, Plaintiff had failed to trim his beard to the required length.  On January 23, 2004, Plaintiff was discharged from the Program.  (Def. Motion, pp. 4-5).  At no time during Plaintiff's attendance at the Program was Plaintiff's religion discussed or addressed.  (Def. Motion, Exh. F, p. 100).  After Plaintiff's discharge from the Program, he offered to shave his beard completely off if he could return to training.  That request was denied.  (Id. at p. 56).

_____

[2]  Plaintiff contends that "the Defendants, including Bernard Willie, repeatedly harassed the Plaintiff about the length of his beard, despite knowing that his beard was the appropriate length." (Sec. Amend. Complaint, paragraph 28).  However, during his deposition, Plaintiff admitted to two incidents in which he was aware that his facial hair was beyond one-eighth of an inch.  Specifically, Plaintiff indicated that he aware his facial hair was too long on the first day of the Program, and on January 20 and 21, 2004.  (Def. Motion, Exh. F).  For purposes of these motions, these three incidents of excessive facial hair as admitted by Plaintiff and Defendants will be recognized by the Court.

## II.    PROCEDURAL BACKGROUND

After Plaintiff's discharge from the Program, he filed a Charge of Discrimination with the EEOC on or about April 7, 2004.  On July 11, 2005, he received a Notice of Right to Sue.  On that same day, July 11, 2005, Plaintiff filed a Complaint against the State of New Jersey and the New Jersey Department of Corrections Correctional Staff Training Academy.  Plaintiff asserted that the stated reasons for his dismissal were pretextual in that he was unlawfully discriminated against because of his religion and in retaliation for initially seeking the facial hair exemption, and that he was repeatedly harassed about the length of his facial hair.  The Complaint alleged violations of the Equal Protection Clause of the United States Constitution, Article I of the New Jersey Constitution, Title VII of the United States Code, and the New Jersey Law Against Discrimination.

On September 6, 2005, the defendants filed a Motion to Dismiss for certain parts of the Complaint.  Those defendants claimed immunity from suit in federal court pursuant to Section 1983, as well as an Eleventh Amendment bar.  Plaintiff consented to the dismissal of the asserted claims without prejudice with leave to filed an amended complaint with regards to the Section 1983 claims and with leave to file all state law claims in state court, and the Court so ordered. The defendants also argued that Plaintiff's eighth claim, a hostile work environment claim under Title VII, should be stricken from the Complaint because Plaintiff failed to include such a claim in the Charge of Discrimination filed with the EEOC prior to the filing of the Complaint.  The Court concluded that Plaintiff had indeed failed to file a hostile work environment claim with the EEOC, and dismissed Count Eight of the Complaint with prejudice.

On December 28, 2005, Plaintiff filed an Amended Complaint, adding new parties, including Defendants Devon Brown, Craig Conway, Bernard Willie, James Lutz and Matthew Kyle.  Defendants answered, and on June 22, 2006, Plaintiff filed a Second Amended Complaint.

The Second Amended Complaint contains eight claims for relief.  Count One asserts unlawful discrimination and termination under Section 1983 in violation of the Fourteenth Amendment to the United States Constitution against the individually named defendants.  Count Two alleges unlawful discrimination and hostile work environment under Section 1983 in violation of the Fourteenth Amendment against the individually named defendants.  Count Three alleges unlawful discrimination and retaliation under Section 1983 in violation of the Fourteenth Amendment by the individually named defendants.  Count Four alleges unlawful discrimination and termination pursuant to Title VII against defendants State of New Jersey and the Department of Corrections.  Count Five alleges retaliation pursuant to Title VII against defendants State of New Jersey and the Department of Corrections.  Count Six alleges violations of the Free Exercise Clause of the First Amendment to the United States Constitution against defendants State of New Jersey and the Department of Corrections.  Count Seven alleges violations of the Free Exercise Clause pursuant to Section 1983 against the individually named defendants.  Count Eight seeks injunctive relief pursuant to the Free Exercise Clause and Section 1983 against all defendants.

**III.    DISCUSSION**

**A.    Standard for a Motion for Summary Judgment**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax

Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Like Ins. Co., 860 F.2d 1209,

1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prod. Co., 789 F.2d

230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no

issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view

the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania

Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

      Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof

on a claim.  Rather, "the determination of whether a given factual dispute requires submission to

a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson,

477 U.S. at 255-56.

      Under the rule, a movant must be awarded summary judgment on all properly supported

issues identified in its motion, except those for which the non-moving party has provided

evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put

another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586, n.12; see also Anderson, 477 U.S. at 247-48 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), cert. denied, 507 U.S. 912 (1993).

### B.    The Parties' Summary Judgment Motions

Plaintiff's motion seeks to have this Court grant partial summary judgment in his favor on Counts Six and Seven (the Free Exercise Clause claims) of his Second Amended Complaint.[3]

---

[3]  However, with regard to Count Seven, Plaintiff seeks summary judgment against only Defendants Devon Brown, Craig Conway and Bernard Willie.

He asserts that a review of his Free Exercise Clause claims should be conducted under the strict scrutiny standard of review, but that either under a strict scrutiny or rational basis review, Defendants' policy regarding facial hair during training fails.  Specifically, Plaintiff argues that the facial hair policy fails to pass constitutional muster because the state's reasons for instituting the rule are not compelling or narrowly tailored to satisfy the strict scrutiny standard, nor rationally related to Defendants' asserted interests under the rational basis standard of review.

Defendants' summary judgment motion seeks full summary judgment on all Plaintiff's claims.  Specifically, Defendants assert firstly that all claims of hostile work environment were previously stricken by this Court in its previous Opinion and Order to Defendants prior motion to dismiss.  Therefore, Defendants argue, Count Two of Plaintiff's Second Amended Complaint is barred from litigation.  Alternatively, Defendants argue, Counts Two, Three and Seven must be dismissed because the individual defendants are entitled to qualified immunity.  Assuming that the individual defendants are not immune, Defendants argue that Counts One Two and Three should nevertheless be dismissed because Plaintiff was not denied any due process guaranteed by the Fourteenth Amendment.  Defendants also argue that Count Eight should be dismissed because federal courts are barred by the Eleventh Amendment from awarding equitable relief against state officials.  Defendants further assert that Counts Four through Seven should be dismissed because Plaintiff's claims lack merit.  The Court will consider each argument in turn.

      **a.**      **Count Two- Hostile Work Environment**

      This Court, in an Opinion and Order dated December 15, 2006, concluded that because Plaintiff did not file a claim for hostile work environment in his previous EEOC Complaint, he was precluded from making a hostile work environment claim in the instant litigation.

8

Despite this ruling, Plaintiff has again attempted to initiate a hostile work environment claim in Count Two of his Second Amended Complaint.  The only difference between the first and Second Amended Complaint regarding the hostile work environment claim is that the claim in the first instance was against the State of New Jersey and the Department of Corrections.  Here, the hostile work environment claim is lodged against the newly added individual defendants only.

However, Plaintiff cites no authority, and this Court has located none, for the proposition that adding defendants allows this previously barred claim to survive under the holdings of Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3d Cir. 1984) and Anjelino v. New York Times, Co., 200 F.3d 73 (3d Cir. 1999).  In his preceding EEOC Complaint, Plaintiff failed to expressly or implicitly evoke a hostile work environment claim.  That failure resulted in Plaintiff's hostile work environment claim being outside the scope of a reasonable investigation for EEOC purposes, and further resulted in a failure by Plaintiff to give notice to Defendants of such a claim.

Plaintiff therefore is barred from asserting a hostile work environment claim.  Defendants are entitled to judgment as a matter of law, and Count Two is dismissed.

### b.    Counts Six and Seven - Free Exercise Clause

Counts Six and Seven allege violations of the Free Exercise Clause by the State of New Jersey and the Department of Corrections (Count Six) and the individual defendants (Count Seven).  Specifically, Plaintiff alleges in his Second Amended Complaint that the policies and conduct of Defendants denied Plaintiff the right to wear his facial hair in accordance with his

Muslim religious beliefs and that he was ultimately terminated as a trainee because of those beliefs.

The Free Exercise Clause, which applies to the State of New Jersey and its representatives pursuant to the Fourteenth Amendment (see <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940)), provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. Depending on the nature of the challenged law or government action, a free exercise claim can prompt either strict scrutiny or rational basis review, a determination this Court must first make.

Under a strict scrutiny analysis, a challenged government action must be narrowly tailored to advance a compelling government interest. Under a rational basis review, it need merely be shown that the action of the government was rationally related to a legitimate government objective.

However, if a law is "neutral" and "generally applicable", and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. <u>See Employment Div., Dep't of Human Resources of Oregon v. Smith</u>, 494 U.S. 872, 879 (1990). Under current practice, a law ordinarily need not be justified by a compelling interest if it is "neutral" in that it is not targeted at religiously motivated conduct and "generally applicable" in that it does not selectively burden religious conduct. <u>See also Church of Lukumi Babalu Aye, Inc. V. Hialeah</u>, 508 U.S. 520, 532-35 (1993).

Further, the Free Exercise Clause's mandate of neutrality toward religion prohibits government from "deciding that secular motivations are more important than religious motivations." <u>Fraternal Order of Police v. City of Newark</u>, 170 F.3d 359, 365 (3d Cir. 1999).

10

"Accordingly, in situations where government officials exercise discretion in applying a facially neutral law, so that whether they enforce the law depends on their evaluation of the reasons underlying a violator's conduct, they contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct." See Lukumi at 537; Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144 (3d Cir., 2002).

In the instant action, Defendants' requirement regarding the facial hair of its trainees is neutral and generally applicable. The reasoning for the rule against facial hair at the academy had no other motivation beyond safety, and to a lesser extent, uniformity among its trainees. But, "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded [from constitutional attack] by mere compliance with the requirement of facial neutrality." To ensure that the considered rule is neutral not only on its face but in its execution, the Court, as instructed in Tenafly, must "look beyond the test of the [rule] and examine whether the [Defendants] enforce it on a religion-neutral basis . . ." Id. at 167.

As stated in Tenafly, if a rule is neutral and generally applicable on its face, and if it is enforced uniformly, Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 879 (1990) would control and any claim under the Free Exercise Clause would necessarily fail. Tenafly at 167.

Here, Defendants had uniformly imposed the rule against facial hair upon trainees. (Def. Motion, p. 10). Every invitation extended to every prospective trainee contained the no facial hair language caveat. (Id.). It was a blanket requirement, necessitated for the health and safety of those trainees who accepted the invitation, and to a lesser extent, for the uniformity of the incoming trainee class. (Def. Motion, p. 20). After independent review of the record, the Court

can find no evidence that the rule imposed by Defendants was anything but neutral, both on its face and in its application.

The Court therefore concludes that Defendants did not violate the Free Exercise Clause of the First Amendment in the creation and implementation of the no facial hair rule it imposed upon Plaintiff and all trainees previously and thereafter.  Defendants offered an accommodation that they were not required to offer to Plaintiff.  Plaintiff agreed to that accommodation, but failed to follow it on three separate occasions.  Defendants were well within their right to release Plaintiff from the program.  Under any standard of review, Defendants conducted themselves appropriately, and did not violate any constitutional rights of Plaintiff.

As there are no questions of material fact, and as Defendants are entitled to judgment as a matter of law, Counts Six and Seven (in the alternative) are dismissed.

### c.      Counts Four and Five - Title VII

Count Four of Plaintiff's Second Amended Complaint asserts unlawful discrimination and termination based upon religion by Defendants State of New Jersey and Department of Corrections, in violation of Title VII.  Count Five asserts retaliation by Defendants State of New Jersey and Department of Corrections, in violation of Title VII.

Defendants assert that Plaintiff's claims under Title VII must be dismissed because Plaintiff cannot show that he was refused reasonable accommodation for his religious practices, or that he was retaliated against for his religion or for asking for such an accommodation.  The Court will consider each claim.

In a claim for discrimination on the basis of religion, courts are required to follow the McDonnell Douglas test.  Storey v. Burns Intern. Security Services, 390 F.3d 760, 764 (3d Cir.

2004).  However, in the case of religious practices, courts have set forth a "reasonable accommodation" standard to resolve the requirements of a particular job and an employee's need to follow his or her religious beliefs.  Specifically, to establish a claim of failure to accommodate religious practices in violation of Title VII, the plaintiff must first prove that he had a bona fide belief that compliance with an employment requirement would be contrary to his religious beliefs.  Second, the plaintiff must inform the employer about the conflict.  Third, the plaintiff must have been discharged or penalized for failing to comply with the conflicting employment requirement.  Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 133-34 (3d Cir. 1986).

Once the plaintiff makes the prima facie case, the burden then switches to the employer defendant to show that it made reasonable effort to accommodate the plaintiff's religious needs, or that it could not reasonably meet the needs without undue hardship.  Ansonia Board of Education v. Philbrook, 479 U.S. 60, 68-69 (1986).

If the defendant employer has reasonably accommodated the plaintiff's religious needs, "the statutory inquiry is at an end.  The employer need not further show that each of the employee's alternative accommodations would result in undue hardship."  Philbrook at 68-69. "[The reasonable accommodation offered by the employer] need not be the one the employee suggests or prefers, and it need not be the one that least burdens the employee . . . the employer satisfies its Title VII religious accommodation obligation when it offers any reasonable accommodation."  Shelton v. Univ. of Medicine and Dentistry of New Jersey, 223 F.3d 220, 225 (3d Cir. 2000).

Here, Defendants offered Plaintiff the opportunity to have facial hair, although usually forbidden for trainees.  Defendants imposed a limit on the length of the facial hair . . . a limit that

Plaintiff agreed to in writing.  Thereafter, starting on the first day of the Program, Plaintiff failed

to abide to that hair length limit.  He failed to abide to the limit at least three times, in a program

that is conducted in military style.  There is no question that Defendants attempted to reasonably

accommodate Plaintiff and that Plaintiff failed to follow the parameters of that accommodation.

Ironically, after Plaintiff was released from the Program, he offered to shave all of the facial hair

in an effort to reenter the Program.  (Kemether Cert., Ex. F, 56:5-8 [Plaintiff Dep.]).

Therefore, the Court concludes that Plaintiff's religious needs were reasonably

accommodated.  Count Four is dismissed.

Regarding Plaintiff's retaliation claims, the anti-retaliation section of Title VII provides

in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against
> any of his employees or applicants for employment . . . because he has opposed any
> practice made an unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  A plaintiff, to assert a prima facie case of retaliation under Title VII,

must allege that: (1) he was engaged in a protected activity known to the employer; (2) he was

thereafter subjected to an adverse employment decision by the employer; and (3) there was a

causal link between the protected activity and the adverse employment decision.  Woodson v.

Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  To satisfy the causation element, a plaintiff

must raise the inference that his protected activity was the likely reason for the adverse action.

Ferguson v. E.I. DuPont de Nemours & Co., 560 F. Supp. 1172, 1200 (D.Del. 1983).  A

plaintiff's ultimate burden in a retaliation case is to convince the fact-finder that retaliatory intent

had a determinative effect on the employer's decision.  Saner v. Synthes, 204 F.3d 494, 501 (3d

Cir. 2000).

An "adverse employment action," as described in the third prima facie element, "alters the employee's compensation, terms, conditions, or privileges of employment."  Cortes v. Univ. of Med. & Dentistry, 391 F. Supp. 2d 298, 312 (D.N.J. 2005) (citations omitted).  As such,

> while a discharge or a refusal to hire would be actionable adverse employment actions, "when one goes beyond that, the conduct must be serious and tangible enough to materially alter an employee's terms and conditions of employment or adversely affect her status as an employee."  Not everything that makes an employee unhappy 'qualifies as [an adverse employment action], for [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

Id. (internal citations omitted).  Rather, a tangible employment action "in most cases inflicts direct economic harm."  Burlington Indus. v. Ellerth, 524 U.S. 742, 762 (1998).

Here, Plaintiff demonstrates an adverse action and clear and direct economic harm as a result when he was released from the Program.  Plaintiff fails, however, to show that the protected activity was the likely cause for the adverse action.  Defendants made a legitimate attempt to accommodate Plaintiff's needs, despite their policy that existed for safety purposes.  Plaintiff voluntarily agreed to the accommodation, and willingly entered the Program.  Defendants were not compelled to offer the accommodation in the first instance, and could have simply denied Plaintiff's request.  It would be pointless for Defendants to create an accommodation for Plaintiff, then release him from the Program in retaliation for said accommodation.

Further, simply because Defendants accommodated Plaintiff, such accommodation did not give Plaintiff license to ignore the parameters of that agreement, which he himself admitted doing on at least three occasions.  When Plaintiff failed to follow the requirements of

Defendants, he put himself at significant risk that he would be dismissed from the Program, which he ultimately was.

As such, Plaintiff fails to meet the burden set forth under <u>Woodson</u>.  Count Five shall therefore be dismissed, as there is no question of material fact, and Defendants are entitled to judgment as a matter of law.

### d.      <u>Counts One and Three - § 1983</u>

Count One of Plaintiff's Second Amended Complaint asserts unlawful discrimination and termination based upon religion by the individual defendants, in violation the Equal Protection Clause of the Fourteenth Amendment pursuant to Title 42, United States Code, Section 1983. Count Three asserts unlawful discrimination and retaliation by based upon religion by the individual defendants, in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Defendants argue that Counts One and Three should be dismissed because Plaintiff was not denied any due process guaranteed by the Fourteenth Amendment.  Alternatively, Defendants assert that Count Three must be dismissed as a matter of law because Title VII is the only appropriate remedy for such claims.  Further, Defendants argue that Plaintiff was not denied either a property or liberty interest within the meaning of the Fourteenth Amendment.

Civil liability may be imposed under 42 U.S.C. § 1983 upon "any person who, acting under the color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States."  <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir. 2000).  Section 1983 does not create any new rights, but only provides a remedy for "the violation of a federal constitutional or statutory right."  <u>Id.</u> (citing <u>Baker v. McCollan</u>, 443 U.S.

16

137, 144, n.3 (1979).  To establish a federal claim under § 1983, plaintiff must show that the

conduct of the defendants, under color of state law, deprived him of a federal constitutional or

statutory right.  See Gruenke, 225 F.3d at 298.

The "under color of state law" requirement is identical to the "state action" requirement

of the fourteenth amendment. Lugar v. Edmondson Oil Co. Inc, 457 U.S. 922, 928 (1982);

Krynicky v. University of Pittsburgh, 742 F.2d 94, 97 (3d Cir. 1984).  A showing that actions

were "under color of state law," like a showing of the presence of "state action," does not require

that the challenged action be pursuant to a state statute. Johnson v. Orr, 780 F.2d 386, 390 (3d

Cir. 1986).  The actual inquiry is "whether there is a sufficiently close nexus between the State

and the challenged action," Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974), or

whether the state "has so far insinuated itself into a position of interdependence" that there is a

"symbiotic relationship" between the actor and the state such that the challenged action can

"fairly be attributed to the state," Johnson, 780 F.2d at 390 (citing Krynicky, 742 F.2d at 99).

In order to state a claim under § 1983 based on the Equal Protection Clause, a plaintiff

must allege that he "was a member of a protected class, was similarly situated to a member of an

unprotected class, and was treated differently from the unprotected class."  Wood v. Rendell,

1995 WL 676418 at *4 (E.D.Pa. 1995).  In its most general sense, the Equal Protection Clause

directs that "all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne

Living Center, Inc., 473 U.S. 432, 439 (1985).  To maintain an action under the Equal Protection

Clause, a plaintiff "must show intentional discrimination against him because of his membership

in a particular class, not merely that he was treated unfairly as an individual."  Huebschen v.

Dept. of Health & Social Service, 716 F.2d 1167, 1171 (7th Cir. 1983); Poli v. SEPTA, 1998 WL

405052 at *10 (E.D.Pa. 1998).

Here, as previously discussed, Plaintiff fails to show that he was treated differently than members of an unprotected class.  All incoming trainees were required to be clean shaven, regardless of religion.  The reasoning for the rule against facial hair for trainees at the Program was to ensure the safety of the trainees and to a lesser extent, uniformity.  Plaintiff was treated differently than his counterparts, but that was at Plaintiff's request, and in his favor.  Although the other trainees were not permitted to grow facial hair, Plaintiff was.  The limit was one-eighth of an inch of facial hair length, to which Plaintiff expressly agreed.  It was only after Plaintiff failed to abide by the agreed upon length, on more than one occasion, that Plaintiff was released from the Program.  Further, Plaintiff presents no evidence that members of other religions were permitted to grow any facial hair whatsoever, let alone facial hair that exceeded one-eighth of an inch.

Plaintiff therefore fails to demonstrate that he was treated differently than his fellow trainees, and to the extent he was treated differently, it was at Plaintiff's behest, with his consent, and in his favor.  As such, Plaintiff fails to show wrongful termination or retaliation under the Equal Protection Clause of the Fourteenth Amendment pursuant to § 1983.  Counts One and Three shall likewise be dismissed.

### e.    Count Eight - the Eleventh Amendment

Count Eight of Plaintiff's Second Amended Complaint seeks injunctive relief to prevent "all Defendants" from enforcing the facial hair policy against current and future trainees.  Count Eight further seeks remuneration for lost pay, reinstatement to the "same position" and punitive damages for "pain and suffering."

18

However, as no constitutional violations have been found to have been made by Defendants, no injunctive, compensatory or punitive damages can be awarded. Further, pursuant to the Eleventh Amendment to the United States Constitution, as interpreted by the United States Supreme Court, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). Thus, "for over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000) (citing College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999); Seminole Tribe of Florida v. Florida, 507 U.S. 44 (1996)). Therefore, absent waiver, neither a State, nor agencies under its control may be subjected to lawsuits in federal court. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Welch v. Texas Dep't of Highways and Public Transp., 483 U.S. 468, 473 (1987).

Although the broad grant of immunity provided under the Eleventh Amendment has been qualified by the judicial doctrine of *Ex Parte* Young, which allows suits against States in federal court seeking prospective injunctive relief to proceed only against state officials acting in their official capacities (see *Ex Parte* Young, 209 U.S. 123 (1908), if the action the state officials have undertook does not violate the Constitution, injunctive relief cannot be provided as a court may not compel a state to act or retrain from acting. Dugan v. Rank, 372 U.S. 609, 620 (1963); Larson v. Domestic & Foreign Corp., 337 U.S. 682 (1949) (the effect of a judgment may not "restrain the Government from acting or to compel it to act").

19

_____As such, Plaintiff cannot be afforded injunctive or monetary relief.  Count Eight of Plaintiff's Second Amended Complaint shall therefore be dismissed.

**III.     CONCLUSION**_____

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Partial Summary Judgment is denied.

Dated: June   6   , 2007

_____          s/Garrett E. Brown, Jr.
_____GARRETT E. BROWN, JR., U.S.D.J.

20